IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| ALBERT D. GANN | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| VS. | * | NO: 3:10CV00061 SWW |
| | * | |
| MICHAEL J. ASTRUE, | * | |
| Commissioner, Social Security | * | |
| Administration | * | |
| | * | |
| Defendant | * | |
| | * | |

**ORDER**

Plaintiff Albert D. Gann ("Gann") appeals the final decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits. The parties have submitted briefs, and the case is ready for decision. After careful consideration, and for the reasons that follow, the decision of the Administrative Law Judge ("ALJ") is affirmed.[1]

**I.     Procedural History**

Albert D. Gann filed applications for disability insurance benefits on January 11, 2007, alleging an inability to work because of a seizures, forgetfulness, and learning problems. (Tr. 129). The Social Security Administration denied Gann's claim initially and upon

---

[1]The Honorable Audrey M. Scott, Administrative Law Judge.

1

reconsideration, and Gann received an administrative hearing before an ALJ on September 1, 2009. In a decision dated September 17, 2009, the ALJ concluded that Gann was not disabled. Gann requested that the Appeals Council review the ALJ's decision, and his request was denied.

## II.     The ALJ's Decision

At the time of the hearing, Gann was forty-two years old with a ninth-grade education. From 1988 to 1989, Gann worked as a bag stacker, and from 1990 to 2004, he worked for a single employer as an assembler (Tr. 44, 130). According to Gann's hearing testimony, his employment as an assembler ended when he was fired for placing bottles in the wrong boxes and failing to wear safety glasses (Tr. 29-30).

In making her decision, the ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(a)-(g).

At step one, the ALJ found that Gann had not engaged in substantial gainful activity since October 21, 2006, the onset date of his alleged disability. (Tr. 17) At step two, the ALJ determined that Gann has severe impairments--epilepsy and borderline intellectual functioning--and that these impairments cause significant limitation in his ability to perform basic work activities. (Tr. 17). At step three, the ALJ determined that Gann did not have an impairment or

combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18) At step four, the ALJ concluded that Gann is unable to perform past relevant work as a stacker, defined by the vocational expert as semi-skilled work; and at step five, the ALJ found that Gann retains the residual functional capacity ("RFC") to perform unskilled work at any exertional level. Finally, based on the testimony of a vocational expert and answers to hypothetical questions, the ALJ found that Gann is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and that Gann is not disabled.

## III. Analysis

The Court's review is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996)**.** In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004).

Gann raises two arguments on appeal: (1) that the ALJ committed error at step three by ignoring substantial evidence that he meets criteria for mental retardation under 20 C.F.R Pt. 404, Subpart P, Appendix 1, § 12.05(C) and (2) that the ALJ committed error by failing to give greater weight to the opinion of Gann's primary care physician, Dr. James L. Miller.

*Mental Retardation*

A claimant has the burden of proving that an impairment, or combination of impairments, meets or equals a listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010)(citations omitted).

The Eighth Circuit has interpreted the listing for mental retardation at issue, 20 C.F.R Part 404, Subpart P, Appendix 1, § 12.05(C), to require the following: (1) a valid verbal, performance or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *See Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir.2006).

The Commissioner does not contest that Gann meets the first and second requirements under § 12.05C. The evidence shows that Gann's IQ scores fall between 60 and 70 (Tr. 184, 206), and the record indicates that Gann's mental impairment manifested before he reached age 22.[2] However, ALJ found that Gann fails to meet the third requirement: a physical or mental impairment, other than his conceded mental impairment, that imposes an additional and significant work-related limitation of function.

According to Gann, the ALJ's finding at stage two, that his that his epilepsy constitutes a

---

[2]Gann testified that he failed the second grade and was enrolled in special education classes in school. (Tr. 29)  Additionally, Gann's IQ scores presumptively reflect his IQ throughout life, including years before age 22. *See Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2004)(noting that "a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning").

severe impairment, indicates that he does in fact suffer from a physical or mental impairment imposing additional and significant work-related limitations of function.[3] An impairment imposes significant limitations under § 12.05(C) when its effect on the claimant's ability to perform basic work is more than slight or minimal. *See Warren v. Shalala* 29 F.3d 1287, 1291 (8th Cir. 1994)(citations omitted). In this case, the ALJ specifically found that Gann's epilepsy does not significantly impact his ability to perform work-related activities based on evidence that Gann "was non compliant with taking his epilepsy medication and at one point, stopped taking it altogether and did not have any resulting seizures." (Tr. 18)

The ALJ's finding that Gann's epilepsy or seizure disorder does not qualify as an additional impairment under § 12.05(C) is supported by the record. In 2004, Gann presented to Dr. James Miller complaining of "nerve problems," and Dr. Miller prescribed Tegretol, an anti-seizure medication. (Tr. 214) In April 2005, Gann reported to an emergency room complaining of seizure activity. Emergency room test results show that Gann's Tegretol level was sub-therapeutic, and he was released two hours after his arrival at the emergency room, with instructions to take his medication as prescribed. (Tr. 188-194). Finally, during a mental evaluation in March 2007, Gann reported that his last seizure occurred in April 2005 (Tr. 204), and progress notes dated June 10, 2008 by Dr. Miller state, "no seizures–off meds." (Tr. 380). The record is void of evidence showing that Gann's epilepsy or seizure disorder affects his

---

[3]Gann does not challenge the ALJ's finding that his seizure disorder fails to meet the listing for epilepsy, 20 C.F.R Part 404, Subpart P, Appendix 1, § 11.02. The record shows that Gann has consistently failed to take his anti-seizure medicine as prescribed. The criteria for epilepsy under §§ 11.02 and 11.03 cannot be applied unless "the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment." 20 C.F.R Part 404, Subpart P, Appendix 1, § 11.00A.

ability to work, and Gann shouldered the burden to make such a showing.

The ALJ found that Gann has the RFC to perform a full range of work at all exertional levels, with non-exertional limitations to avoid dangerous machinery and unprotected heights and no commercial driving.  (Tr. 19)  According to Gann, these non-exertional limitations indicate that he suffers from an impairment that imposes additional and significant work-related limitations of function.  The Court disagrees.  Avoiding unprotected heights and dangerous machinery amount to routine seizure precautions that do not have a significant effect on the ability to work.  *See* Social Security Ruling 85015("A person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exist at all exertional levels.").   Similarly, a restriction against commercial driving is a seizure precaution that does not have a significant effect on work that exists at all exertional levels.

Regarding Gann's mental RFC, the ALJ found as follows:

> Due to his mental impairments, the claimant can perform unskilled, routine, repetitive work requiring little judgment on his part.  He can perform work where interpersonal contact is incidental to work performed and there are few variables.  There should be no public interaction.  He can perform a structured job with some supervision in order for him to focus on the task and persist in completing it within [an] acceptable time frame.

(Tr. 19)  Gann argues that the ALJ's restriction on public interaction indicates an additional limitation under § 12.05C.  However, this restriction is related to Gann's *conceded* mental impairment and does not, therefore, indicate the presence of an *additional* and significant work-related limitation of function.

In sum, the Court finds that, based on the record as a whole, the ALJ's conclusion that

Gann fails to meet the third requirement under § 12.05C (a physical or mental impairment, other than his conceded mental impairment, that imposes an additional and significant work-related limitation of function) is supported by substantial evidence.

*Dr. Miller's Opinion*

Gann argues that the ALJ failed to give proper weight to Dr. Miller's opinion set forth in a letter dated August 31, 2009, which reads:

> Mr. Gann is a 41 year old [white male] I have followed for many years for a seizure disorder from childhood. Along with his seizures, his mental functioning has not ever been sufficient for him to be employed. He likewise has two sons who are similarly affected.
>
> I do not expect him to ever be capable of working in any gainful means. In visits to my office he exhibits strong thoughts of religiosity and depression. His mother is his greatest mentor for all his day to day care and activity. He probably is not capable of managing personal needs and finances without her intervention. I recommend that he be approved for benefits.

(Tr. 375)

An ALJ is not required to adopt the opinion of a physician on the ultimate issue of a claimant's ability to engage in substantial gainful employment. *See Qualls v. Apfel*, 158 F.3d 425, 428 (8th Cir.1998). "Likewise, while a treating physician's opinion is generally entitled to 'substantial weight,' such an opinion does not 'automatically control' because the hearing examiner must evaluate the record as a whole." *Wagner v. Astrue* 499 F.3d 842, 849 (8th Cir. 2007)(citing *Wilson v. Apfel*, 172 F.3d 539, 542 (8th Cir.1999)). "'It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record.'" *Id*. (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013–14 (8th Cir.2000)). "'Moreover, an ALJ may credit other medical

evaluation over that of the treating physician when such other assessments are supported by better or more thorough medical evidence.'" *Id*. (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir.2000)).

The ALJ gave no weight to Dr. Miller's opinion that Gann cannot work, stating: "This is an opinion reserved for the Commissioner, and Dr. Miller did not explain how the claimant's impairments would affect his ability to perform work-related activities, especially in light of the fact that he worked for almost 14 years for the same employer." (Tr. 21).

Dr. Miller's statement that Gann's "mental functioning has not ever been sufficient for him to be employed" is nullified by the fact that Gann worked for fourteen years as an assembler, and the record is void of evidence that Dr. Miller based his opinion on diagnostic tests or objective findings. Furthermore, as noted in the ALJ's decision, Dr. Miller's opinion is contradicted by the opinions of two consulting psychologists. Dr. Floyd Covey evaluated Gann in July 2004 and observed that he performs most of the activities of daily living, keeps up with the news and politics, reads the Bible, performs daily chores, and "gets along" with others. (Tr. 182) Dr. Covey determined that Gann is mildly mentally retarded as measured by WAIS-III, but that based on his employment history and ability to perform the activities of daily living, a diagnosis of borderline intellectual functioning is more appropriate. (Tr. 186). Dr. Covey further concluded that Gann can function in an employment setting. (Tr. 186) Dr. Charles Spellmann evaluated Gann in October 2007 and opined that Gann could "cope with the cognitive demands of many work like tasks." (Tr. 224) Like Dr. Covey, Dr. Spellmann considered that Gann held the same job for fourteen years.

Dr. Kenneth Jones, a psychologist, evaluated Gann in March 2007, and concluded that

Gann could not "hold down a job" or take care of himself without help from his mother.   In her decision, the ALJ correctly notes that Dr. Jones's report contains no mention regarding that Gann held the same job for fourteen years.  The ALJ concluded that Gann's activities of daily living and work history, documented in Dr. Covey's report, are consistent with a higher level of adaptive functioning than indicated by Dr. Jones. (Tr. 20).

The ALJ took into account all medical evidence when making her decision, and she did not err in discounting Dr. Miller's conclusory opinion.   After careful review, the Court finds that the record contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also, Robertson v. Sullivan*, 925 F.2d 1124, 1126-27 (8th Cir. 1991).

IT IS THEREFORE ORDERED that the final determination of the Commissioner is AFFIRMED.  Consistent with the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 23rd DAY OF September, 2011.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE